Hare, J.
The Cleveland. City Cable Railway Company and The Woodland Avenue & West Side Railway Company, owning and operating separate lines of street railway in the city of Cleveland, in June, 1893, were consolidated, and became the Cleveland City Railway Company, commonly known as “The Little Consolidated.”
The statute under which this consolidation was effected, is section 3381 of the Revised Statutes, which reads:
*166 “The directors of the several companies may enter into a joint agreement, under the corporate seal of each company, for the consolidation of the companies, and prescribing the terms and conditions thereof, the mode of carrying the same into effect, the name of the new company, the number of directors and other officers thereof, and their places of residence, the amount of the capital stock of the new company agreed upon, the number of shares of capital stock, the amount of each share and the manner of converting the capital stock of each of the constituent companies into that of the new company, with such other details as they may deem necessary to perfect the new organization and the consolidation of the companies.”
On the ioth day of May, 1893, the stockholders of the two companies entered into an agreement which, so far as is essential to be noted here, reads:
“The undersigned stockholders of The Cleveland City Cable Railway Company hereby appoint and irrevocably designate Frank DeH. Robison and John J. .Shipherd as their agents and proxies to carry out this agreement and perfect said consolidation, and they are hereby authorized to attend any and all meetings of The Cleveland City Cable Railway Company called for the purpose of carrying out the terms of this agreement, and to vote all the stock standing in the names of the undersigned, in such manner as they shall find necessary to carry out and ratify all the purposes of this agreement; and each of the undersigned stockholders in said company hereby agrees to deliver to said two persons or their chairman at such time as they may designate, all of the stock held by him, to be exchanged for stock of the consolidated company in proportion to the respective holdings of each as each shall be entitled to receive the same.”
Thereafter, on the nth day of May, 1893, the directors of the two companies entered into a consolidation agreement, fixing the amount of the capital stock of the consolidated company at.50,000 shares; 31,750 shares to be distributed to the stockholders of The Woodland Avenue & West Side Street Railway Company, and 18,250 shares to the stockholders of The Cleveland City Cable Railway Company; *167 leaving the remainder of the stock in the treasury of the com- • pany; which agreement upon the subject of the distribution- < of the stock to the stockholders of The Cable Company, . reads:
“To The Cleveland City Cable Railway Company, party of the first part, 18,750 shares, to be disposed of by the said' company, so far as necessary to liquidate its floating indebtedness, and the remainder to be distributed among the ■ holders of the common and preferred stock of the said company in proportion to the present relative value of the preferred and common stock.”
This agreement was, by the requisite number of stock- - holders of the two constituent companies, approved ,and the - consolidation became complete.
On the 16th day of June, 1893, The Cleveland City Railway Company issued to Shipherd and DeH. Robison in one • certificate 18,500 shares of stock of the Consolidated Company. This stock was delivered to said Trustees for distribution to the stockholders of the Cable Company entitled . thereto. Some of this stock, instead of being delivered to • the rightful owners, were appropriated and used by Shipherd' for his own use and benefit.
At the time of the consolidation 100 shares of the preferred stock of the Cable Company stood in the name of ’ George H. Holt, and 200- shares of the preferred stuock in the name of Giles W. Taintor, both of whom were members of " the firm or Taintor & Holt doing business as brokers in the - city of New "York. Each was a director of the Cable Company and party to 'all of the proceedings had in the consolidation of said two Companies, including the preliminary ■ agreement above referred to.
In 1891 Taintor & Holt borrowed of the plaintiff bank ■. $25,000 and assigned to it as collateral security for said loan-said 300 shares of the preferred-stock. These certificates of" stock were transferable only on the books of the company, and it was in said certificate so expressed. From the - time these certificates were assigned to the bank, it held' them with power to transfer endorsed thereon; but that pow- • er was never executed, and Taintor & Holt remained the re'- *168 ■gistered owner of the stock until long after the date of the consolidation. No certificate of stock in the Cleveland City Railway Company was ever delivered to Taintor & Holt ■or either of them, in lieu of the said 300 shares of the preferred stock of the Cable Company, nor to the plaintiff bank.
The bank had no knowledeg of the consolidation of said two companies, or of the proceedings to effect the same, until long after the same was perfected.
Whether as between the registered owner of this stock and the Cleveland City Railway Compang, the loss, resulting from the wrongful appropriation of said stock by ■Shipherd should fall upon Taintor & Holt or the Railway ■Company, need not now be considered or determined, although it properly arises on the record.
The question that must be considered and decided, arises between the bank holding this stock as collateral security for the debt of Taintor & Holt, and the Railroad Company. Upon whom must the loss fall, as between these two?
It is claimed in behalf of the plaintiff in error, ■ that the bank had no greater or different rights than Taintor & Holt, ■or either of them, and, as they had no right of action against this company upon said stock, it followes that their pledgee, the bank, would have none.
To this proposition we can not assent.
The Cable Company, prior to the consolidation, could not ■rightfully issue new stock to the plaintiff’s assignor, leaving the old stock in the possession of the assignee, and escape responsibility to the assignee for loss resulting therefrom.
No arrangements between the Cable Company and the registered owner of the stock, made without the knowledge of the assignee of the stock, who held it as security for a debt ■due from the registered owner, could deprive the assignee <of his property rights therein. The assignment and possession of the certificate of stock by the assignee protects him from any such peril; nor could the Cable Company, its stockliolders or directors, by contract or otherwise, transfer to the Consolidated Company the power to deprive the assignee of his property in such certificate by an agreement -with the registered owner or otherwise, unless such power *169 is expressly given by the statute under the authority of which the consolidation was 'effected.
It is true that in the joint agreement which the directors of the constituent companies were authorized to make, they were’ authorized to provide “the manner of converting the capital stock of each of the constituent companies into that of the new company, with ¡such other details as they may deem necessary to perfect the new organization and the consolidation of the companies.”
This, however, must be done with due regard to the rights of all persons having an interest in the stock of the old company. It was not intended by this statute to give to the directors of the old company, or to its registered ¡stockholders, the power to deprive the assignee of the stock, not transferred on the books of the company, of the equitable rights therein. This could no more be done by the consolidated company than by one of the constituent companies prior to the consolidation.
On the 'completion of the consolidation the old companies became extinct except for certain limited specific purposes, and the stockholders of the old. companies became stockholders in the new company, and the directors of the new company sustained towards them the same relation as did the directors of the constituent companies.
■The two companies formed and became merged in the new, and the new company only had an existence. It succeeded to all the franchises, rights and privileges of the constituent companies and incurred all the liabilities of each. The same franchises and power existed, but under a new name. Its duty to its stockholders was precisely 'the same as that of the constituent companies to its stockholders.
The relation of the new company to pledgees of the stock of the constituent companies is the same as was that of the constituent companies before the consolidation.
While the pledgo.r of a certificate of stock issued by.one of the constituent companies, may act in all proceedings authorized in effecting a consolidation of the two companies, the consolidation company can not rightfully issue to him a certificate of stock in the new company in lieu of the old certificate in the hands of a pledgee, without the knowledge or consent of such pledgee, leaving the old certi *170 ■ficate in the hands of the pledgee.
Hoyt, Dustin & Kelley, for Defendant in Error.
Squire, Sanders & Dempsey, for Plaintiff in Error.
In the delivery of the nerw stock the new company owes the duty to the pledgee to withhold its delivery until the old stock is surrendered. It may not rightfully deliver the new stock to the pledgor or to any one for him, leaving the old stock in the hands of the pledgee; and, if loss results ■from such wrongful delivery, it must fall upon the company making such wrongful delivery.
There is no substantial disagreement as to the facts of the case and, applying the law to the fácts, the judgment of the court of common pleas was clearly right, and there was no prejudicial error either in the admission of testimony or in the charge to the jury.
The judgment of the court of common pleas is affirmed.